**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY WEST, | ) | |
| | ) | |
| Plaintiff-Claimant, | ) | |
| | ) | |
| v. | ) | No. 12-cv-272 |
| | ) | |
| | ) | Jeffrey T. Gilbert |
| CAROLYN W. COLVIN, Acting | ) | Magistrate Judge |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Jeffrey West brings this action under 42 U.S.C. § 405(g) seeking reversal or remand of the decision of Respondent Carolyn W. Colvin,[1] Commissioner of Social Security ("Commissioner"), denying Claimant's application for disability insurance benefits. Claimant argues that Administrative Law Judge's ("ALJ") decision denying his application for disability benefits should be reversed or, alternatively, vacated and remanded to the Social Security Administration ("SSA") for further proceedings. In support of his motion for summary judgment, Claimant raises the following issues: (1) whether the ALJ erred by failing to include Claimant's mild limitations with regard to daily activities, social functioning, and concentration, persistence, or pace in his assessment of Claimant's residual functional capacity ("RFC"); (2) whether the ALJ improperly evaluated the credibility of Claimant's claims of disabling pain and

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin is automatically substituted as the Defendant-Respondent in the case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

symptoms under SSR 96-7p;[2] and (3) whether a Sentence Six remand should be granted to consider new evidence.

For the reasons set forth below, Claimant's motion for summary judgment is denied. The decision of the Commissioner of Social Security is affirmed.

## I. BACKGROUND

**A.    Procedural History**

Claimant filed applications for disability insurance benefits and supplemental security income on November 14, 2008, alleging a disability onset date of February 2, 2008. R.26, 155-61. The SSA denied the application initially on January 20, 2009 and upon reconsideration on April 1, 2009. R.26, 90-106. Claimant then requested a hearing before an ALJ on April 17, 2009. R.26, 109-10. Claimant appeared with his attorney and testified at a hearing on September 10, 2009 before the ALJ. R.26. Medical Expert Dr. Charles Metcalf, M.D., also appeared and testified (R.30-35, 67-72, 77-79), and Vocational Expert Robert Hammond testified by telephone. R.35-36, 55, 72-74, 77, 79-84.

On March 22, 2010, the ALJ issued his decision finding that Claimant is not disabled. R.23, 26-37. Specifically, the ALJ found that Claimant suffered from several severe impairments, including hepatitis C, irritable bowel syndrome, shoulder problems, and a respiratory condition (R.28), but that Claimant's mental impairments of depression and anxiety disorder were not severe. R.29. The ALJ concluded that Claimants impairments no more than mildly limited his ability to perform activities of daily living, his social functioning, and his concentration, persistence, or pace. R.29. The ALJ found that Claimant could perform work of

---

[2] We have collapsed three of the Claimant's arguments – that the ALJ improperly evaluated Claimant's credibility under SSR 96-7p, that the ALJ erroneously analyzed Claimant's claims of pain and placed improper emphasis on his ability to perform daily activities, and that the ALJ improperly assessed Claimant's RFC when he failed to consider Claimant's alleged fatigue – because the arguments are related and overlap in terms of the ALJ's credibility analysis.

medium exertion (R.34) and "[had] the residual capacity to lift and carry up to fifty pounds occasionally and up to twenty-five pounds frequently; stand and sit up to six hours out of an eight hour day; reach overhead with the right arm no more than occasionally; never climb ropes, ladders, or scaffolds; and [could not] work around unprotected heights or dangerous moving machinery." R.31. The ALJ then concluded that Claimant was not capable of performing his past relevant work (R. 35) but that, considering Claimant's age, education, work experience, and residual functional capacity, Claimant is capable of making a successful adjustment to other work. R.35-36. Therefore, the ALJ determined that Claimant is not disabled. R.36.

Claimant filed a request with the Appeals Council for review of the ALJ's decision but was denied on November 15, 2011, making the ALJ's determination the final decision of the Commissioner. R.1. Claimant seeks review in this Court pursuant to 42 U.S.C. § 405(g).

## B. Hearing Testimony

### 1. Claimant Jeffrey West

At the time of the hearing, Claimant was 52 years old, single, and living alone. R.49-51. Claimant graduated from high school before going to work in a factory. R.52. His past relevant work was as a factory quality insurance inspector, which included packing activity. R.55. Claimant testified that in January 2008 he was working full time, but by summer 2008 he was only able to work approximately 20 hours a week. R.53-54. Claimant stopped working completely in November 2008. *Id.* Claimant testified that he slowed down and eventually was unable to work because he had dizzy spells, felt weak and nauseous, would get drained of energy, and suffered abdominal pain due to his liver problem. R.56-57. Claimant testified he was hospitalized in October 2008 for abdominal pain and weakness and was diagnosed with hepatitis C. R.57-58. He was prescribed treatment and began to feel better, but then he had a

bad reaction and had to stop the treatment. R.58. After he stopped treatment, Claimant testified that he began to feel as bad as he did before he started treatment and that his symptoms get worse as he gets farther from taking the treatment. *Id.* Claimant testified he experienced periods of constipation followed by diarrhea. R.76-77. Claimant also had surgery on his right shoulder and a proposed surgery on his left shoulder was postponed due to his deteriorating health. R.63. Claimant testified he had difficulty lifting and could not reach above his head without his shoulders popping. R.64.

On an average day, Claimant gets up and attends an AA meeting in the morning for two hours. R.61. Then he tries to go for a walk, usually for a distance of a quarter-mile to a half-mile but not for more than a mile, and eats lunch. *Id.* After lunch he cannot do anything physical, so he reads or puts together puzzles. *Id.* Claimant testified that even this level of activity can make him winded. R.67. Claimant testified that his sickness has made driving difficult and that he cannot drive more than four miles because he often feels lightheaded or nauseous. R.51-52. Claimant testified he can do some housework; for example, he can vacuum one room a day when he used to be able to vacuum the whole apartment in a day. R.59. He has a friend who helps him do his laundry, often cooks for him, and takes him grocery shopping. *Id.* Claimant testified that he rarely cooks because he is afraid he will nod off with the stove on and set the house on fire. *Id.* He also testified he needs a friend to take him grocery shopping because he gets dizzy and faint waiting in line and struggles to push the cart. R.60.

### 2. Medical Expert Dr. Charles Metcalf

The ME testified that although Claimant's physicians diagnosed him with a history of hepatitis C and hepatitis B, the most recent tests on his liver were normal: the liver was not palpable on examination, the albumin level was normal, the liver ebbing was normal, and his

enzymes were normal.  R.69-70.  The ME testified there was no evidence of liver failure on the record.  R.70.  The ME acknowledged that patients with hepatitis sometimes are fatigued and suffer abdominal and physical pain.  R.73.

The ME further stated that the results from Claimant's most recent pulmonary function test were normal and contained no indication of chronic pulmonary disease, nor was there any evidence of such a condition in the record.  R.70.  The ME also testified that Claimant did have a past history of right shoulder surgery to correct erosion of the head of the right humerus bone but there was no evidence of any problems in the left shoulder.  *Id.* The ME stated that Claimant exhibited anxiety and depression, but that these were mildly limiting and would not affect his functional capacity.  R.72.  Based on the medical record, the ME opined that Claimant could lift fifty pounds occasionally, lift twenty-five pounds frequently, reach overhead with the right arm only occasionally, and sit or stand for six hours.  R.71.  However, the ME stated that Claimant should avoid ladders or heights.  *Id.*

### 3. Vocational Expert Robert Hammond

The ALJ questioned the VE on the availability of jobs for an individual of Claimant's age, education, and work history, who could perform all exertional or non-exertional work but was limited to lifting no more than fifty pounds occasionally and twenty-five pounds regularly, who could sit and stand for six hours, who was limited to occasional overhead reaching with his right arm, and who could not climb ladders, scaffolds, or ropes or work around unprotected heights or moving machinery.  R.79-80.  The VE opined that Claimant could return to his past work as a quality control inspector.  R.80.  The VE testified that Claimant could also work as a hand packer, a merchandise deliverer, and a cleaner.  *Id.*  The VE acknowledged that a worker unable to operate a motor vehicle due to dizziness would be precluded from being a merchandise

driver. R.81. The VE also testified that a worker who had to take five to six bathroom breaks a day due to diarrhea, nausea, or constipation would likely be precluded from performing all of these jobs (R.82), as would a worker who had to miss a day or two of work a week. R.82-83.

**C.    Medical Evidence**

**1. Evanston Northwestern Healthcare (Highland Park Hospital)**

On May 9, 2008, Claimant was admitted to the emergency room at Evanston Northwestern Healthcare (Highland Park Hospital) with a chief complaint of abdominal pain. R.257. He complained of nausea, diarrhea, and epigastric discomfort since he stopped his pain medications cold turkey three weeks prior to this visit. *Id.* His tests all came back relatively normal, but his abdomen was very tender in the epigastrium and the left upper quadrant. R.257-58. He was diagnosed with gastric hyperacidity and discharged that day. R.258.

**2. Condell Medical Center**

On June 1, 2008, Claimant was admitted to Condell Medical Center with complaints of more than severe ongoing right upper quadrant abdominal pain, chest pain, and sycope. R.273. He did not have any weight loss or blood in his bowel movement, and his labs and tests were relatively normal except for mild, chronic reactive gastritis in his stomach. R.271, 273. The record notes that Claimant had shoulder surgery in the past and that Claimant has a history of anxiety and gastrointestinal reflux disease. R.273. A CT scan of Claimant's abdomen, pelvis, and head were normal, and a chest x-ray was negative, but x-rays showed degenerative changes in the left shoulder. R.316-19. His blood work was also normal, but he was admitted for further evaluation by a cardiologist. R.274. Dr. Raymond Chow, the cardiologist, noted that Claimant's cardiac enzymes were negative and his EKG was normal. R.275. Dr. Matseshe also examined Claimant further about his abdominal pain and found abdominal pain with tenderness but no

other abnormalities.  R.277.  Two days later, doctors still could not find evidence of cardiac issues, there were no further objective findings, and an endoscopy confirmed an absence of gastrointestinal issues.  R.320-23, 326.  Claimant was discharged June 5, 2008 with a diagnosis of right upper quadrant abdominal pain, likely of a musculoskeletal nature, atypical chest pain, status post syncope, anxiety, and gastritis.  R.271.  The discharge instructions included an order for no heavy lifting.  R.272.

### 3. John H. Stroger Jr. Hospital of Cook County

On July 28, 2008, Claimant was admitted to Stroger Hospital with right shoulder pain. R.342.  He was diagnosed with severe erosion of articular cartilage compatible with osteoarthritis.  *Id.*  On July 10, 2008, Claimant was admitted to Stroger Hospital with abdominal pains.  R.340.  A stomach biopsy showed reactive gastropathy, focal intestinal metaplasia, and focal reactive atypia.  *Id.*

On October 27, 2008, Claimant was admitted to Stroger Hospital with abdominal pain, nausea, and vomiting.  R.334.  He also claimed he lost consciousness when he got off the couch the previous day.  *Id.*  His physical exam was unremarkable and his labs were normal.  *Id.*  He was discharged October 31, 2008 with a diagnosis of irritable bowel syndrome, which was likely causing his gastrointestinal symptoms.  *Id.*  The doctors were unable to explain his alleged syncopal episode (fainting).  *Id.*  Finally, he was told to follow up in the gastrointestinal department as an outpatient to manage his hepatitis C.  *Id.*  Although the medical report mentions Claimant's hepatitis C in multiple places, it is not clear in the record how the treating physician concluded Claimant had hepatitis C.  R.332, 334.

### 4. Consultative Psychiatrist Gregory Rudolph, Ph.D

On December 5, 2008, Dr. Rudolph examined Claimant at the request of the Bureau of Developmental Disabilities Services (BDDS). R.373. Claimant had a history of generalized anxiety as well as substance abuse. *Id.* Claimant appeared in a "vegetative state" and was experiencing depression with some suicidal thoughts. *Id.* Dr. Rudolph found that Claimant was able to take care of his basic needs, Claimant could perform more advanced adaptive skills, Claimant's memory skills were intact, Claimant could perform arithmetical calculations, Claimant was able to use good judgment and reasoning, and Claimant was capable of managing his own finances. *Id.* These advanced adaptive skills included driving, shopping, making change, and doing routine household chores. R.375.

### 5. Consultative Physician Dr. Sergei Shevlyagin, M.D., Ph.D.

On January 8, 2009, Dr. Shevlyagin examined Claimant in his office. Claimant complained of abdominal pain, belching, loss of appetite, and weight loss. R.378. Claimant had a past medical history of hepatitis C, irritable bowel syndrome, depression, and gastritis and had his right shoulder surgically replaced. *Id.* Claimant had no chest pain or shortness of breath. R.379. The tests the doctor conducted came back relatively normal, with some tenderness in the upper right quadrant of Claimant's abdomen. *Id.* Claimant was able to manipulate with fingers of both hands, and his grip was symmetrical and 5/5 bilaterally. *Id.* Claimant was able to walk on his own, he did not experience difficulties getting on or off the examination table, and he had no problem sitting up from a supine position. *Id.* Dr. Shevlyagin diagnosed Claimant with chronic hepatitis C, a history of depression, abdominal pain, and irritable bowel syndrome. R.380.

**6. State Agency Physicians: Donald Henson, Ph.D and Lenore Gonzales, M.D.**

On December 13, 2008, Dr. Henson completed a Psychiatric Review of Claimant for his disability determination. Dr. Henson stated Claimant had non-severe impairments (R.359) of depression (R.362) and generalized anxiety disorder. R.364. He was stated Claimant had past substance abuse problems. R.359, 367. Dr. Henson found he had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. R.369.

On January 16, 2009, Dr. Gonzales completed a Physical Residual Functional Capacity Assessment of Claimant. R.382. Dr. Gonzales diagnosed Claimant primarily with hepatitis C and secondarily with irritable bowel syndrome. *Id.* Dr. Gonzales indicated Claimant could lift fifty pounds occasionally (R.383), could stand, sit, or walk for about six hours of an eight-hour workday (*Id.*), could push or pull an unlimited amount (*Id.*), should never climb ladders, ropes, or scaffolds due to a history of syncope episodes (R.384), and should avoid hazards such as machinery or heights. R.386.

**D.      The ALJ's Decision**

On March 22, 2010 the ALJ issued his decision finding that Claimant has not been under a disability, as defined by the Social Security Act, from February 2, 2008, the alleged date of disability, through the date of his decision. R.26. The ALJ stated that Claimant suffers from the severe impairments of hepatitis C, irritable bowel syndrome, shoulder problems, and a respiratory condition (R.28), but that his depression and generalized anxiety are not severe. R.29. The ALJ found that none of Claimant's impairments singly or in combination meet or medically equal one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1 (20

C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). R.30. The ALJ concluded that despite his severe impairments, Claimant retains the RFC to perform work that required lifting and carrying up to fifty pounds occasionally and lift and carry up to twenty-five pounds frequently, sitting or standing for six of eight hours, and occasionally reaching overhead with his right arm but that never required climbing ropes, ladders, or scaffolds or working around moving machinery or unprotected heights. R.31. Based on the RFC, the ALJ conceded that Claimant cannot perform his past work (R.35), but found that Claimant can perform work as a hand packer, merchandise deliverer, or cleaner. R.36.

At step one, the ALJ found that Claimant has not engaged in substantial gainful activity since February 2, 2008, the alleged onset date. R.28. At step two, the ALJ found that Claimant has severe impairments, including hepatitis C, irritable bowel syndrome, a respiratory condition, and shoulder problems. *Id.* The ALJ concluded that these impairments are severe because they more than minimally affect Claimant's functional work abilities. R.29. However, the ALJ found that Claimant's mental impairments of general anxiety and depression are non-severe because they do not cause more than a minimal limitation in Claimant's ability to perform basic mental work activities. *Id.* The ALJ reasoned that Claimant's mental impairments only cause a mild limitation in terms of daily living, social functioning, concentration, persistence, or pace, and decompensation because: (1) Claimant needs a friend to help him complete daily activities and has trouble sleeping, but he can independently care for his personal needs, prepare simple meals, perform light housework, and take walks daily; (2) Claimant has a friend who helps him with his daily activities, he attends church and AA meetings regularly, and his sister stated he socializes with others in his building; (3) Claimant can drive and shop for groceries, take care of his own finances, read his mail, and write his own checks; and (4) Claimant has experienced no extended

episodes of decompensation. *Id.* In coming to this conclusion, the ALJ afforded great weight both to the ME's testimony based on the record that Claimant does not have any functional limitations due to his mental impairments and to the State agency physician's opinion that claimant's mental impairments are not severe. R.30.

At step three, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). *Id.* The ALJ then considered Claimant's RFC and concluded that Claimant has "the residual functional capacity to lift and carry up to fifty pounds occasionally and up to twenty-five pounds frequently; stand and sit up to six hours out of an eight hour day; reach overhead with the right arm no more than occasionally; never climb ropes, ladders, or scaffolds; and cannot work around unprotected heights or dangerous moving machinery." R.31. In evaluating the effect of Claimant's symptoms on his RFC, the ALJ followed a two-step process, first determining if the symptom can be linked to an underlying medically determinable impairment, and next assessing the "intensity, persistence, and limiting effects" of the symptom. *Id.* If the statements about the "intensity, persistence, or functionally limiting effects" are not substantially supported by objective medical evidence, the ALJ must assess the credibility of the statements based on the entire case record. *Id.*

The ALJ concluded that Claimant's impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ found that the medical evidence and objective findings "do not support the existence of limitations greater than those determined in this decision." R.33. After thoroughly analyzing the Claimant's testimony as well as the medical evidence, the ALJ determined the Claimant's "subjective complaints of disabling pain and symptoms are not

entirely credible, nor are they fully supported by the objective medical evidence and subjective

factors in the record." *Id.* The ALJ pointed to several inconsistencies in the hearing and the

medical record, including the diagnosis of hepatitis B and C but no current liver abnormalities

and disabling pain, nausea, and dizziness but the ability to complete activities of daily living.

R.32-34.

At step four, the ALJ concluded that, based on his RFC, Claimant could not perform his

past work. R.35. However, at step five the ALJ ultimately concluded that considering

Claimant's age, education, work experience, and RFC, Claimant is capable of making a

successful adjustment to other work. R.36. Therefore, the ALJ determined that Claimant is not

disabled under sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act. *Id.*

## II. LEGAL STANDARD

### A.      Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes

the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v.

Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the

decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is

supported by substantial evidence in the record and whether the ALJ applied the correct legal

standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere

scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2992). Even

when there is adequate evidence in the record to support the decision, however, the findings will

not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.      Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S>C. § 423(d)(2)(A). Gainful employment is defined as "the kind of

work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## III. DISCUSSION

The Claimant raises the following issues in support of his motion: (1) whether the ALJ committed legal error by failing to include Claimant's mental limitations in his RFC assessment; (2) whether the ALJ committed legal error in assessing the credibility of Claimant's complaints; and (3) whether the Court should remand the matter under Sentence Six of 42 U.S.C. § 405(g) to consider new evidence.

### A. The ALJ's Failure To Mention Claimant's Mild Limitation In Mental Functioning In His RFC Assessment Is Harmless Error

Claimant asserts that the ALJ erred by failing to include Claimant's mild limitations with regard to his activities of daily living, social functioning, and concentration, persistence, or pace in his RFC assessment. A claimant's RFC is an assessment of what he or she can do despite his or her limitations. SSR 96-7p. When assessing a claimant's RFC, an ALJ must consider ". . . limitations and restrictions attributable to medically determinable impairments." *Id.* If the ALJ

finds a combination of medically severe impairments, like the ALJ did in this case (R.28), "the combined impact of the impairments will be considered throughout the disability determination process." 20. C.F.R. § 404.1523. Thus, an ALJ must consider all limitations, including those that are non-severe, in assessing a claimant's RFC. *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (citing 20 C.F.R. § 404.1523). Here, the ALJ determined in his decision that Claimant had no more than a mild limitation with regard to performing daily activities, social functioning, and concentration, persistence, or pace; however, the ALJ did not include these limitations in Claimant's RFC assessment. Since the ALJ did not include these mild limitations in his RFC assessment, the ALJ erred. *Id.*

However, this error is harmless in the context of the case. The Seventh Circuit has stated that "when it is plain, as it is in this case, that the administrative law judge's factual determinations would compel a denial of benefits under the new regulations as well as under the old, the doctrine of harmless error . . . would spare us from having to order a remand in any event." *Keys v. Barnhard*, 327 F.3d 990, 994-94 (7th Cir. 2003). "If the outcome of a remand is foreordained, we need not order one." *Sahara Coal Co. v. Office of Workers Compensation Programs, U.S. Dept. of Labor*, 946 F.2d 554, 558 (7th Cir. 1991).

In this case, the ALJ's factual determinations would compel a denial of benefits regardless of whether he specifically addressed the Claimant's mental limitations in his RFC analysis, so the harmless error rule applies. First, it is important to note that the ALJ did not completely ignore Claimant's mild mental limitations in assessing his RFC. Although the Claimant's mental limitations were not the ALJ's primary focus in his RFC assessment, the ALJ acknowledged his duty to consider these limitations in his assessment. After determining Claimant's mental limitations, the ALJ stated, "the following residual functional capacity

assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." R.30. In his RFC analysis, the ALJ also mentions Claimant's complaint that he is "slowly running out of will." R.32. Despite this claim, though, the ALJ stated Claimant takes care of his personal needs and socializes with friends. R.34. This suggests that the ALJ did take Claimant's mild mental limitations into account but decided that they would not affect the ALJ's RFC assessment in light of Claimant's daily activities. The ALJ's failure to address the mental limitations more specifically in his assessment is harmless error.

The ALJ concluded based on the objective medical evidence and the ME's testimony that Claimant's mental impairments were non-severe and that Claimant only had at most mild limitations due to these impairments. R.30. The ME testified that Claimant's mental health "was not really" an issue and that Claimant was, "at most, mildly limited" in this area, so he would not include mental limitations in his functional capacity assessment "as any limitation." R.72. The ALJ afforded this opinion great weight because the ME based his opinion on his review of the evidence in the entire record, including Claimant's testimony. R.30. No treating, consulting, or reviewing physician ascribed functional limitations to Claimant's alleged mental impairments. R.30, 72, 371, 373-77. This evidence all suggests that Claimant's mental limitations had very little, if any, impact on his ability to function. In light of the ME's testimony and the lack of any functional limitations to Claimant's mental impairments in the medical record, the outcome of this case on remand would be the same. Therefore, the ALJ committed harmless error in failing to consider Claimant's mild mental limitations specifically in his RFC assessment. *See Sahara Coal*, 946 F.3d at 558.

**B.  The ALJ Did Not Erroneously Assess The Credibility Of Claimant's Subjective Complaints Under SSR 96-7p.**

Claimant asserts that the ALJ did not adequately evaluate the credibility of Claimant's claims of disabling pain and symptoms under SSR 96-7p because (1) the ALJ's failure to explain his conclusion that Claimant's complaints and allegations were not credible denied Claimant a full review of his claim; (2) the ALJ failed to analyze Claimant's complaints of pain as required by SSR 96-7p; (3) the ALJ erred by concluding Claimant could sustain full-time work because he could perform certain activities of daily life; (4) the ALJ erred by failing to consider his complaints of fatigue and frequent need to use the restroom in determining his RFC; and (5) the ALJ erred by holding Claimant to a higher burden of proof than preponderance of the evidence.

When faced with a claimant alleging subjective symptoms, an ALJ must evaluate the credibility of the claimant's testimony about his symptoms.  SSR 96-7p.  The ALJ must consider the testimony in light of the entire record and be "sufficiently specific" as to the reasons for his credibility determination.  *Id.*  The ALJ is in the best position to observe the witnesses, so his credibility finding will not be overturned as long as it has some support in the record.  *Dixon v. Missouri*, 270 F.3d 1171, 1178-79 (7th Cir. 2001).  "An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'"  *Skarbek v.* Barnhart, 390 F.3d 500, 504-05 (7th Cir. 2004) (quoting *Zurawski v.* Halter, 245 F.3d 881, 887 (7th Cir. 2001)).  A discrepancy between the alleged symptoms and the medical evidence is probative that a claimant may be exaggerating his condition.  *Powers v. Apfel*, 207 F.3d 431, 435-36 (7th Cir. 2000).  The Seventh Circuit has stated that "applicants for disability benefits have an incentive to exaggerate their symptoms," and therefore, "an administrative law judge is free to discount the applicant's testimony on the basis of other evidence in the case."  *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006).

In evaluating a claimant's credibility, the ALJ must comply with SSR 96-7p and articulate his reasons for his credibility evaluation. *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). The ALJ's determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for that weight." *Id.* at 787 (citation omitted). The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In this case, the ALJ's decision is supported by substantial evidence. The ALJ pointed to evidence in the medical record and from Claimant's own testimony that contradicts Claimant's self-reported symptoms. The ALJ acknowledged Claimant's complaints that he felt "sick constantly," had "severe stomach pain," was "constantly violently sick," and had "stomach pain which prevents him from resting well." R.31-32. The ALJ then examined the medical evidence, determining that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." R.32. The ALJ pointed to the fact that Claimant's physical exams and tests in 2008 and 2009 "returned with normal results" and were "unremarkable" and his only restriction was "to avoid heavy lifting." R.32-33. Despite his complaints of increasing severe abdominal pain at one hospital visit, Claimant's "physical examination and labs were essentially normal." R.33. The ALJ noted that although Claimant had a history of hepatitis B and C, his tests "did not show any liver abnormalities." R.34. The only restriction that ever was placed on Claimant was to avoid heavy lifting, and this

restriction was not mentioned in later medical records. *Id.* The ALJ concluded that "the lack of functional restrictions by the Claimant's treating physicians is contradictory to his subjective complaints of disabling symptoms and an inability to perform any work." *Id.*

Claimant argues that the lack of functional restrictions is not instructive in this case because Claimant was not working at the time of his hospital visits, so the doctors would have had no reason to restrict his ability to work. *See Eskew v. Astue*, 2011 WL 6009005 at *3 (7th Cir. 2011) (holding it was improper for an ALJ to discredit Claimant's credibility based on a lack of work restrictions when he was unemployed at the time). Claimant was working at least part-time until November 2008. R.53. When Claimant visited various hospitals in May, June, July, and October of 2008 (R.257-58, 272, 334), he was not unemployed, so it was proper for the ALJ to base his credibility assessment partly on the lack of functional restrictions in Claimant's medical records.

The ALJ also pointed to Claimant's activities of daily living as inconsistent with his alleged "total disability and an inability to perform work activities at any exertional level." R.34. Claimant testified that he walks at least a quarter of a mile daily, completes light meal preparation, does laundry, vacuums, grocery shops, and attends AA meetings. *Id.* Claimant also testified that he completes puzzles and can walk about a mile. R.32. The ALJ found that these activities "are not as limited as one would expect, given the claimant's allegations of disabling symptoms." R.34.

Claimant argues that the ALJ erred by concluding that Claimant was able to sustain full-time work because he was able to perform certain daily activities. Had the ALJ based his credibility assessment on this evidence alone, then this may have been a problem. In this case, however, the ALJ based his determination not only on the Claimant's testimony about his

activities of daily living but also on the objective medical evidence, the lack of functional restrictions in the medical record, and the ME's testimony. "It is only when the ALJ's determination lacks any explanation or support that [the court] will declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (citation omitted). Here, the ALJ built "an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539 (7th Cir. 2008). Claimant failed to establish that the ALJ's credibility assessment was "patently wrong." *See Cook v. Astrue*, 800 F.Supp. 2d 897, 908-09 (N.D. Ill. 2001).

Claimant argues that the ALJ erred in not considering his symptoms of fatigue and frequent need to use the bathroom in assessing his RFC. Claimant failed to present "medical evidence to support this claimed limitation." *Spencer v. Astrue*, 776 F. Supp. 2d 640, 650 (N.D. Ill. 2011) (citing *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010)); *see also Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) ("It is [claimant], however, who bears the burden of proving that she is disabled, and she failed to present any medical evidence linking her chronic fatigue syndrome to the unacceptable level of absenteeism she alleges."). "That fatigue is a common symptom . . . reveals nothing about the severity, intensity, or persistence of fatigue that any individual may experience at a particular point in time. *Milliken v. Astrue*, 397 F. App'x 218, 223 (7th Cir. 2010). The ME testified that fatigue can sometimes be a symptom of hepatitis C and that Claimant may have it, but there is no evidence specifically that he does. R.73.

The ALJ did not ignore the alleged fatigue symptoms; rather, the ALJ lists fatigue multiple times as one of Claimant's complaints, mentioning that "he feels weak most of the time" (R.31), "his weakness prevents him from doing very many activities" (R.32), and "he is so fatigued." *Id*. The ALJ stated that his activities of daily living, including walking at least a

quarter of a mile daily, doing household chores, and driving to AA meetings, contradict his allegations of "totally disabling symptoms," of which fatigue is one. R.34. Thus the ALJ did not err because he in fact did consider Claimant's symptoms of fatigue in making his RFC assessment.

Claimant argues that the ALJ erred in failing to consider Claimant's frequent need to use the restroom as a result of his IBS in assessing Claimant's RFC. The ALJ must only articulate, "at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995). The Seventh Circuit stated that "the ALJ's failure to address [certain] specific findings . . . does not render his decision unsupported by substantial evidence because an ALJ need not address every pieve of evidence in his decision." *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). Thus the ALJ did not necessarily err by failing to consider the evidence on Claimant's frequent restroom use.

Although the ALJ did not talk about Claimant's need to use the bathroom specifically, he did extensively discuss Claimant's testimony. For example, the ALJ stated that Claimant "feels sick constantly" (R.31), "feels severe stomach pain" (*id.*), "vomits frequently" (*id.*) is "constantly violently sick," and "has stomach pain which prevents him from resting well." *Id.* The ALJ points to Claimant's subjective reports of disabling stomach pain as inconsistent with Claimant's testimony that he can walk at least a quarter of a mile daily (R.32) and complete daily activities like "light meal preparation, light housework including laundry and vacuuming, grocery shopping, and attending AA meetings." R.34. Also, the ALJ pointed to evidence in the record that Claimant can walk as much as one mile (R.32), puts together puzzles (*id.*), "takes care of his personal needs fairly well, drives a car, and socializes with friends." R.34.

Claimant argues that ALJ should have addressed the VE's testimony that someone using the restroom "three or four times above and beyond the two breaks and the lunch period that's allowed" would "exceed the amount of time that would be allowed for most positions" at the SVP level. R.82. However, the record does not support Claimant's need to use the restroom so many times during the workday. Claimant testified he gets constipated and can go five to seven days without using the bathroom followed by diarrhea. R.76-77. Claimant also testified that he "frequently" has to use the bathroom, but he did not specify how frequently. R.77. There is nothing in the record as to how frequently Claimant needs to use the restroom. Thus the ALJ did not err in failing to consider the VE's testimony about the impact of frequent restroom use on Claimant's RFC.

Finally, Claimant argues that the ALJ erred by applying an incorrect evidentiary standard in assessing Claimant's credibility. The ALJ must base his credibility determination "on the preponderance of the evidence offered at the hearing or otherwise included in the record." 20 C.F.R. § 404.953(a). In his opinion, the ALJ said that Claimant's subjective complaints were "not 'fully' supported by the objective medical evidence and the subjective factors in the record." R33. Claimant argues that his complaints did not have to be "fully supported" but rather only supported by a preponderance of the evidence. Reviewing the ALJ's opinion, it is not apparent that the ALJ used a more exacting standard than preponderance of the evidence. At an earlier point in his opinion, the ALJ states, "the medical findings do not support the existence of limitations greater than those reported above." R.32. Later, the ALJ concludes, "the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision." R.33. This language suggests that the ALJ was in fact reviewing the evidence under the proper standard and found there was no support for Claimaint's complaints in the

medical record. As discussed above, there is substantial evidence supporting the ALJ's conclusion on Claimant's credibility. Therefore, the Court cannot say the ALJ applied an incorrect evidentiary standard in assessing Claimant's credibility.

After careful review of the ALJ's opinion, the Court finds there is substantial evidence in the record that supports the ALJ's findings on Claimant's credibility.

## C.   A Sentence Six Remand Is Not Warranted Because Claimant Failed To Show Good Cause For The Delay In Incorporating The Evidence

Claimant asserts that the Court should remand this matter under Sentence Six of 42 U.S.C. § 405(g) to consider the functional capacity assessment completed by Dr. Melissa Inpanbutr-Martinkus, M.D., in April 2011. Sentence Six of 42 U.S.C. § 405(g) states that a Court may remand a matter to the Commissioner "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). A claimant must show there is a reasonable probability the ALJ would have concluded differently had he or she considered the new evidence at the time of the decision. *Sears v. Bowen*, 840 F.2d 394, 399-400 (7th Cir. 1988). "[N]ew evidence is material only if it is relevant to the claimant's condition 'during the relevant time period encompassed by the disability application under review.'" *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (quoting *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1989)).

Claimant argues there is new material evidence that may have caused the ALJ to conclude differently. In September 2010, Dr. Inpanbutr-Martinkus examined Claimant's left shoulder and found "severe narrowing of the left shoulder joint with marginal osteophyte formation and osteosclerosis." R.415. In April 2011, she completed a Physical Residual Functional Capacity Questionnaire, in which she stated that Claimant was limited to reaching

overhead with his left arm for ten percent of an eight-hour day. R.414. At the hearing,

Claimant complained of left shoulder pain and limited use of his left arm (R.66) and said he was

scheduled to have surgery on his left shoulder at some point (R.76), but the ALJ did not limit

Claimant's lifting or reaching with his left arm in his RFC assessment. R.31. As Dr. Inpanbutr-

Martinkus' assessment supports Claimant's claims during his original testimony, it is reasonable

that the condition she found existed at the time of the original hearing. Had the ALJ heard this

objective medical evidence, he may or may not have concluded differently about how much

Claimant could use his left arm.

However, Claimant has not shown there was good cause for his year and a half delay in

providing this evidence. At the end of the administrative hearing in September 2009, the ALJ

stated that he would delay closing the record for thirty days to provide Claimant with the

opportunity to submit additional material to support his disability claim. R.87. Claimant did not

submit new records then or ask for more time to do so. Rather, he submitted new records to the

Appeals Council in October 2011, over a year and a half after the ALJ's decision. R.4, 252.

"Where, as here, the reasons for pursuing additional evidence are apparent while the case is still

subject to administrative review, and there is no impediment to obtaining the evidence, no good

cause has been demonstrated for failing to bring the evidence to the Secretary's attention."

*Anderson v. Bowen*, 868 F.2d 921, 928 (7th Cir. 1989).

In this case, Claimant testified that he had surgery scheduled for his left shoulder but had

to put it on hold because of his illness. R.76. However, Claimant did not submit any medical

records to corroborate this statement. The ALJ provided Claimant with time to amend his claim

with new evidence, which Claimant failed to do in the given time, and Claimant has not provided

any reason for the delay in providing this evidence. Claimant reasonably should have been able

to provide records from the doctor who examined his left shoulder in the thirty day time period. "Because [Claimant] could have presented such evidence earlier but did not do so, good cause has not been established." *Mowery v. Apfel*, 2000 WL 12828, at *3 (7th Cir. Jan. 3, 2000). Thus a Sentence Six remand is inappropriate.

## IV. CONCLUSION

For the reasons set forth above, Claimant's motion for summary judgment is denied and the decision of the Commissioner of Social Security is affirmed.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 19, 2013